ALTSHULER *v.* ALTSHULER.

5-130                                        258 S. W. 2d 545

Opinion delivered June 8, 1953.

*Eichenbaum, Walther, Scott & Miller,* for appellant.

*Richard W. Hobbs,* for appellee.

WARD, Justice. This appeal involves the question of allowances for the support of a twelve year old boy. A

proper perspective of this question requires a brief history of the facts and proceedings leading up to the present litigation.

The parties hereto were married and lived in New York City where they have continued to live at all times except for a short time when appellee was a resident of this state, as will be later explained. A son, Mortimer, Jr., was born to this union about the year 1940.

In 1944 the parties separated and by order of a proper court appellant was to pay $70 a week for the support of appellee and the four year old son. Either by court order or agreement the mother, appellee, was to have custody of Mortimer, Jr., but the father was to have visitation rights amounting in the aggregate to approximately 80 days each year.

In 1945 appellee came to Arkansas, established a residence and secured a decree of divorce. In this action the court gave appellee custody of the son apparently on the terms mentioned before and ordered appellant to pay $200 per month for the support of appellee and Mortimer, Jr. These payments were made by appellant for four or five years.

In 1949 appellant remarried and now has a child by that marriage. Soon after appellant's marriage appellee applied to the Domestic Relations Court in New York City for additional support money for the son and on January 30, 1951, an allowance of $115 per month was granted. It appears that the Court was aware of the $200 allowance made here but naturally could not tell how much was for the son's support.

On February 3, 1951, appellee remarried and, for that reason, appellant refused to pay the full $200 allowance for the following month but did offer to pay the sum of $50 per month in addition, it appears, to the $115 per month allowance made by the New York Court. Appellee refused to accept the reduced payments and in April, 1951, she petitioned the original trial court here for an adjustment based solely on support for the son. In August, 1951, the trial court here reduced the

$200 allowance to $150 per month for Mortimer, Jr. This order was made with knowledge of and in addition to the $115 monthly allowance mentioned above. Following this and in December, 1951, appellant, by petition to the Domestic Relations Court in New York, obtained a reduction there of $65 in the original $115 allotment. In making the reduction the Court recognized the Arkansas allowance of $150 per month.

The reduction order of the New York Court precipitated the action from whence comes this appeal. On March 7, 1952, appellee filed a motion in the original cause in this state asking to have the $150 monthly allowance increased, and the trial court granted a $65 per month increase, or an allowance here of $215. This allowance when added to the $50 allowed by the New York court, of course, makes a total allowance of $265 for the support of Mortimer, Jr. Appellant urges a reversal of the trial court on two grounds.

*Proper Forum.* Appellant insists, but we do not agree, that the New York court is the proper forum, and that therefore the action in this state should have been dismissed. Much could be said in favor of such contention from the standpoint of convenience since all parties concerned live in New York, but the fact remains that the Chancery Court of this state obtained unquestioned jurisdiction of both parties and subject matter in the original divorce suit in 1945, and by proper orders has retained it ever since. In cases too numerous and well known to require citations we have held that once our Chancery Court obtains jurisdiction, as it has here, it retains jurisdiction to adjust allowances for support and in matters of custody. If the trial court in this instance had seen fit to disclaim jurisdiction and had remanded the parties to the New York courts, a different question might have been presented, but such a situation is not presented and we express no opinion in regard thereto. Our attention is called to a citation found in 14 *Am. Jur.* at page 424, § 230, which discusses the doctrine of *Forum Non Convenies.* Without quoting, it suffices to say this authority recognizes that the matter of forum, in in-

stances like the one presented here, involves "the exercise of judicial discretion" on the part of the trial judge, and we cannot say the trial judge abused his discretion in this instance.

*Amount of Allowance.* The only other ground for a reversal urged by appellant is that the award of $215 is excessive. We recognize, of course, that this award must be considered in connection with the New York award of $50 per month, and that appellant will have to pay a total of $265 per month for the support of his son, Mortimer, Jr., but we can not say that the decision of the Chancellor in this regard is against the weight of the evidence. Much of the essential testimony is not conflicting, and we believe a brief summary will suffice to justify our conclusion. As stated by appellant, only two things need be considered. One is the proper amount required and the other is the ability of appellant to pay.

*Proper Amount.* Appellee says it costs from $400 to $450 per month to adequately provide clothing, food, education, recreation and incidentals, that she has been keeping her son's money in a separate account and spending it all for his benefit, and that she has had to supplement funds for that purpose from other sources. While this sum might, on first impression, appear excessive, yet we must consider that these parties live in a large city where expenses are undoubtedly greater than in a smaller place. We should also take into consideration the manner in which they were accustomed to living, as well as the boy's age and the general increase in living expenses during the past few years. There is another circumstance which indicates appellant himself might not consider $265 excessive for his twelve year old son, for it appears he is paying $224 per month rent for an apartment in which he has an $8,000 interest and that he is paying $270 per month for a maid for his wife and a nurse for his infant child. Appellant complains that appellee is not spending all the money on Mortimer, Jr., but it seems that no such objection was made previous to this litigation. Under these facts and circumstances we think the Chancellor's judgment as to

the size of the allowance is supported by the weight of the evidence.

*Appellant's Ability to Pay.* In addition to what has been shown above there is other evidence which we think amply sustains the Chancellor's conclusion that appellant is financially able to pay the combined monthly allotments totaling $265. During the past eight years, according to the record, appellant has drawn as salary an average of around $23,000 per year, after payment of Federal income taxes, and he is the sole owner of the business [from which he draws his salary] which has assets of from $80,000 to $90,000. According to appellant's testimony there is a possibility his salary may not be as large hereafter as it has been previously, but that will be a matter for future adjustment by the court if his predictions prove well found. Also, to offset some reduction in income, appellant admits that he has been paying $5,000 a year for the support of his mother who died in 1952. He will, of course, not have this expense hereafter.

Affirmed.